# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2018-0682, <u>State of New Hampshire v. Bryan Clickner</u>, the court on September 12, 2019, issued the following order:**

Having considered the opening and reply briefs filed by the defendant, Bryan Clickner, the brief filed by the State, and the record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). The defendant appeals his conviction, following a bench trial in Circuit Court (<u>Rappa</u>, J.), on one count of simple assault. We affirm.

The relevant facts follow. The defendant is an attorney whose primary practice is bankruptcy law. The victim and her husband retained the defendant to file a bankruptcy proceeding on their behalf and, thereafter, to file an adversary action against a creditor for violating the automatic stay and discharge protection of the bankruptcy court. The defendant represented the victim and her husband in the adversary action on a contingency fee basis.

On the day in question, the defendant met the victim and her husband at a local fast food restaurant. According to the defendant, he gave the victim a check made payable to her and asked her to endorse the check and return it to him so that he could deposit it in his trust account. When the victim refused to do so, the defendant was heard shouting at the victim to "give [him his] check back." When she continued to refuse to relinquish the check, the defendant placed his hands on her. According to the defendant, he merely reached for her hand and held on to it. According to an eyewitness and the victim's husband, at a minimum, the defendant firmly grasped the victim's arm. The eyewitness testified that she heard the victim repeatedly ask the defendant to "[p]lease let go." The eyewitness testified that she asked restaurant staff to call the police. She described the victim as sobbing and visibly upset. The responding officer testified that the victim's face was red, that she was crying and shaking, and that she had several marks on her neck and a scratch on her arm.

At the scene of the crime, the victim spoke to a police officer, and her conversation was recorded by the officer's body camcorder. The video of the interview was not preserved, however. During the trial, the defendant moved to dismiss the charge based upon the State's failure to preserve the recording. The trial court declined to do so. However, the court granted the defendant's alternative request for relief, which was to exclude the victim's testimony. The

court stated that it did not consider the victim's testimony in its decision. The State did not object to the trial court's exclusion of the victim's testimony.

The defendant first contests the trial court's determination that his conduct was not justified under RSA 627:8 (2016), which provides, in pertinent part: "A person is justified in using force upon another when and to the extent that he reasonably believes it necessary to prevent what is or reasonably appears to be an unlawful taking of his property, or criminal mischief, or to retake his property immediately following its taking . . . ." The trial court found that the defendant's use of force was not justified because "[t]here were several options available to the Defendant, . . . that would have been far superior to physically assaulting his client." The defendant contends that in so finding, the trial court erred.

In effect, the defendant contends that the evidence was insufficient for the trier of fact (here, the trial court) to have found that the State met its burden of disproving his justification defense beyond a reasonable doubt. See RSA 627:1 (2016) (providing that conduct that is justifiable under RSA chapter 627 "constitutes a defense to any offense"); RSA 626:7, I(a) (2016) (providing that the State must disprove defenses beyond a reasonable doubt); see also State v. Etienne, 163 N.H. 57, 81 (2011) (explaining that the legislature has determined that defenses set forth in RSA chapter 627 constitute "pure defenses, and, thus, negating such a defense becomes an element of the offense that the State must prove beyond a reasonable doubt"). When considering a challenge to the sufficiency of the evidence, we objectively review the record to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, considering all the evidence and all reasonable inferences therefrom in the light most favorable to the State. State v. Francis, 167 N.H. 598, 603-04 (2015). The trier of fact may draw reasonable inferences from facts proved as well as from facts found as the result of other inferences, provided they can be reasonably drawn therefrom. Id. We examine each evidentiary item in the context of all the evidence, and not in isolation. State v. Craig, 167 N.H. 361, 369 (2015). Because a challenge to the sufficiency of the evidence raises a claim of legal error, our standard of review is de novo. Id. at 370. When, as in this case, the proof involves both direct and circumstantial evidence, a sufficiency challenge must fail if the evidence, including the trier of fact's credibility determinations, is such that a rational trier of fact could find guilt beyond a reasonable doubt, even if the evidence would support a rational conclusion other than guilt if the trier of fact had resolved credibility issues differently. State v. Saunders, 164 N.H. 342, 351 (2012).

To disprove the defendant's justification defense, the State had to prove, beyond a reasonable doubt, that the defendant was not justified "in using force" upon the victim because his belief that such force was necessary to retake the check from the victim was unreasonable. See RSA 627:8; cf. State v.

West, 167 N.H. 465, 470-71 (2017) (ruling that the trial court's jury instructions correctly explained "the requirement in RSA 627:7 that one using force must reasonably believe the use of force is necessary to prevent or terminate a criminal trespass"). "The operative word is 'reasonable,' which is determined by an objective standard. A belief which is unreasonable, even though honest, will not support the defense." State v. Leaf, 137 N.H. 97, 99 (1993) (construing comparable language in statute justifying physical force by persons with special responsibilities). "In other words, it is not enough for the defendant to say, 'I believed it reasonably necessary to use the force I used'; it is for the [trier of fact] to determine whether the belief, even though honest, was in fact reasonable under all the circumstances." Id.

Viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the State, we conclude that there was sufficient evidence for a rational trier of fact to find, beyond a reasonable doubt, that the defendant's belief that the force he used to retake the check from the victim was unreasonable. The evidence before the trial court was that, to retake the check, the defendant, who was the victim's attorney, grabbed her arm so firmly that an eyewitness thought it necessary to call the police. The force used was such that the victim was described as distraught and shaking. Police observed several marks on her neck and a scratch on her arm. From the defendant's own admission that he did not intend to hurt the victim, the trial court could have reasonably concluded "that the defendant himself did not reasonably believe that the force used was necessary." Id. Viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the State, we conclude that a rational trier of fact could have found, beyond a reasonable doubt, that the defendant's belief that the force he used was necessary was an unreasonable belief.

To the extent that the defendant asserts that the trial court's narrative order is deficient because it "made no findings or mention as to whether the State had addressed its subsequent burden of proof arising from the proffered justification defense," we conclude that this argument is not developed sufficiently for our review. (Emphasis omitted.) See State v. Blackmer, 149 N.H. 47, 49 (2003).

The defendant next challenges the trial court's decision to deny his motion to dismiss, and, instead, to grant his request to exclude the victim's testimony. Before addressing the defendant's appellate arguments on this issue, we note that, like the trial court, we have not considered the victim's testimony in our decision. Accordingly, the defendant's motion to strike the State's brief because the State summarized the victim's testimony therein is denied because that motion is moot.

In cases involving lost evidence, once a defendant demonstrates that the State has lost or destroyed apparently relevant evidence, the State has the

burden of demonstrating that it acted both with good faith, in the sense that it was free of any intent to prejudice the defendant, and without culpable negligence. State v. Giordano, 138 N.H. 90, 94 (1993). If the State carries that burden, the defendant is not entitled to relief unless he demonstrates that the lost evidence was material, to the degree that its introduction would probably have led to a verdict of not guilty, and that its loss prejudiced him by precluding the introduction of evidence that would probably have led to a verdict in his favor. Id.

The trial court applied a different legal paradigm, however. It applied the law that governs instances when the State has withheld exculpatory evidence. When a defendant argues that the State denied him access to exculpatory evidence, he has the initial burden to show that the evidence that was withheld was favorable; if he meets that burden, he must then show that the State knowingly withheld the evidence. State v. Etienne, 163 N.H. 57, 88 (2011). If the defendant shows that the State knowingly withheld the evidence, there is a presumption that the evidence withheld was material, and the burden shifts to the State to prove, beyond a reasonable doubt, that the undisclosed evidence would not have affected the verdict. Id. at 88-89. If, however, the defendant fails to show that the State knowingly withheld the evidence, then the presumption of materiality does not arise, and the defendant retains the burden to prove materiality. Id. at 89. Doing so requires the defendant to demonstrate a reasonable probability that, had the evidence been disclosed to the defense, the result in the case would have been different. Id. Applying this framework, the trial court denied the defendant's motion to dismiss, finding that: (1) the defendant "failed to show in the first instance that there was exculpatory evidence on the lost video"; (2) the defendant "failed to prove that anything on the video was material to his defense"; and (3) the defendant "did not show that the State knowingly lost the evidence."

Ordinarily, we would remand for the trial court to apply the correct law to the defendant's motion to dismiss. We elect not to do so in this case because the parties have briefed the correct law and, based upon the record submitted on appeal, we conclude that the trial court reached the correct result as a matter of law. See State v. Nightingale, 160 N.H. 569, 575-76 (2010) (upholding trial court's decision when it reached the correct result on mistaken grounds because "valid alternative grounds support [its] decision" (quotation omitted)); cf. State v. Sawyer, 145 N.H. 704, 706 (2001) (explaining that we would decide, in the first instance, whether the defendant's conduct constituted consent for the police to enter her apartment because "the parties fully litigated the issue below, and because the essential facts are not in dispute"); Appeal of Cote, 139 N.H. 575, 580 (1995) (determining that, because we had available to us the same documentary record that had been available to the administrative agency, we would address a purely legal question in the first instance).

4

We first address whether the State met its burden of showing that it acted in good faith, meaning without the intent to prejudice the defendant. Giordano, 138 N.H. at 94. The trial court specifically found, at trial, that the officer did not act with "any malice" when she failed to preserve the video. "This is essentially a finding that the [officer] acted in good faith." State v. Bruce, 147 N.H. 37, 40 (2001). That finding is supported by the record.

The officer testified that when an officer returns to the police station after having captured a video on the body camcorder, the video is automatically uploaded to a website, where it is stored. If an officer wants to "save" the video for evidentiary purposes, the officer must do so, manually, via the website. If the video is not marked to be "saved" for evidentiary purposes, it is automatically deleted from the website after 90 days. The officer testified that she forgot to save the video of the victim's interview. She testified that because she forgot to save the video, it was automatically deleted. There is no evidence in the record that the officer at issue acted with any intent to prejudice the defendant.

We next address whether the State met its burden of showing that it did not act with culpable negligence. See Giordano, 138 N.H. at 94. "Culpable negligence is something more than ordinary negligence, mere neglect, or the failure to use ordinary care — it is negligence that is censorious, faulty, or blamable." Giordano, 138 N.H. at 95. "Although the trial court made no express finding on the issue of culpable negligence, the evidentiary record of what is known about the loss of evidence is sufficient to indicate that there was none." State v. Dukette, 127 N.H. 540, 547 (1985).

Here, as the trial court found, and as the record supports, the officer at issue made "a rookie mistake." The officer testified that, when the incident occurred, she was a recent graduate of the police academy, having graduated only a month prior to the incident. She merely forgot to save the video on the website. Such a mistake does not rise to the level of culpable negligence, as a matter of law. See Bruce, 147 N.H. at 40-41 (deciding that the unexplained loss by the police of certain photographs, "without more, does not amount to culpable negligence"); Giordano, 138 N.H. at 95 (concluding that the State was not culpably negligent in losing photographs where the officer who took them delivered them to the evidence room and then, several months later, was unable to locate them); State v. Smagula, 133 N.H. 600, 603-04 (1990) (determining that State's destruction of photographic array and detective's failure to record which photographs comprised the array did not constitute culpable negligence where array was disassembled in accordance with departmental policy and detective's actions failed "to show more than mere negligence").

Because we conclude that the State has carried its initial burden, to prevail, the defendant must show "that the loss of evidence prejudiced him and

that the evidence was material in proving his innocence." Bruce, 147 N.H. at 41. Assuming without deciding that the defendant has shown that the lost video was material in proving his innocence, he has failed to demonstrate that the loss of the video prejudiced him by precluding the introduction of evidence that would probably have led to a verdict in his favor. Giordano, 138 N.H. at 94.

"The crucial point in evaluating the prejudice suffered by a defendant is whether the loss of physical evidence eliminates whatever exculpatory value this evidence might have had." Bruce, 147 N.H. at 41 (quotation omitted). To prevail, the defendant must rely upon "[m]ore than mere speculation." Giordano, 138 N.H. at 96. In Giordano, we concluded that misplacing photographs did not prejudice the defendant because other evidence provided the same facts as the photographs would have supplied. Bruce, 147 N.H. at 41; see Giordano, 138 N.H. at 95-96. We reached a similar conclusion in Bruce. Bruce, 147 N.H. at 41. In this case, the State offered testimony from the victim's husband, the police officer who responded to the scene, and an eyewitness to establish what occurred. This evidence "obviated any prejudice to the defendant" from the loss of the video of the victim's statement. Id.

Moreover, to the extent that the defendant argues that the video's loss was prejudicial because he could not use it to his benefit when cross-examining the victim, we observe that, at his request and without objection from the State, the trial court excluded the victim's testimony. Before doing so, the trial court explained that excluding the victim's testimony "eliminates [defense counsel's] opportunity to cross-examine her, which could be much more powerful than a video that may or may not confirm what she's saying today." Defense counsel stated: "I understand that. I understand the risk, and I've spoken with my client about it. And he wants me to proceed with what I think is best. And I think excluding her testimony in its entirety, stricken from the record, is the fair remedy here." Because the victim's testimony was excluded in its entirety, her credibility was not an issue, and, thus, we conclude, as a matter of law, that the unavailability of the video to cross-examine the victim was not prejudicial to the defendant.

Alternatively, the defendant argues that "[t]he current standard of culpable negligence is largely unworkable and almost impossible for an accused to satisfy," and that "[r]equiring a defendant to somehow demonstrate the nature and potential effect of the loss of [videotaped] evidence presents an all but impossible burden." To the extent that the defendant intends this argument as an invitation to overrule Dukette and its progeny, we decline his invitation. We have identified four factors to be considered in determining whether precedent should be overruled. State v. Quintero, 162 N.H. 526, 532-33 (2011). The defendant has failed to brief those factors, and, therefore, has not persuaded us to reconsider our precedent. See State v. Smith, 166 N.H. 40, 45 (2017). We have reviewed the defendant's remaining arguments and

conclude that they do not warrant further discussion.  See Vogel v. Vogel, 137 N.H. 321, 322 (1993).

Affirmed.

Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Eileen Fox,**
**Clerk**